Good morning, Your Honors. I'm Zandra Lopez from the Federal Defenders in San Diego, and I'm here on behalf of Mr. Cline. I will be reserving two minutes of my time for rebuttal. The district court in this case committed error when it failed to consider the 3553A factors, particularly a factor that was highlighted and addressed by Mr. Cline's counsel, the primary concerns of the Sentencing and Reform Act. CHIEF JUSTICE ROBERTS You know, you knew I was going to ask you this question, but the Court said the Court considered those factors. ZANDRA LOPEZ Correct. CHIEF JUSTICE ROBERTS And then the Court enumerated quite a number of them. So how can you say the Court didn't consider the factors when the Court said it was considering the factors and even ticked off at least three, if not four, of them? ZANDRA LOPEZ Well, it looks like on an excerpt of Record 52 that the district court just minimally, in passing, referenced 3553A factors. It just simply stated that  CHIEF JUSTICE ROBERTS Taking into consideration the aggravating and mitigating factors in all of the sentencing factors in 3553A. ZANDRA LOPEZ Right. CHIEF JUSTICE ROBERTS I mean, so are we supposed to tell the Court, you said you were taking all of them into consideration, but you didn't? ZANDRA LOPEZ Well, I think there's two problems with that, because that particular sentence, when looked at with the whole ruling of the Court, it looks like she only took into consideration the 3553A factors in relation to the guideline range and nothing else. And another problem with that is that Mr. Klein's counsel specifically highlighted and addressed the sentencing disparity factor. He provided evidence, and the Court CHIEF JUSTICE ROBERTS Well, so that cuts against you, because you're telling me that the lawyer specifically argued that factor. And so are we supposed to assume that the Court didn't pay any attention? ZANDRA LOPEZ Well, the Court – the problem is the Court cannot just presume that the district court took this into consideration, because it doesn't appear from the reading of the record that it took this particular factor in consideration at all. CHIEF JUSTICE ROBERTS Aren't you asking us to turn the sentencing process into a sort of a kabuki dance where judges have to follow a certain pattern and it's not good enough to say, I'm considering 3553A, you've got to say to it, and then you've got to just march mechanically down the list? ZANDRA LOPEZ No, Your Honor. We're not advocating a checklist that the Court has  CHIEF JUSTICE ROBERTS Well, why not? I mean, we do that for Rule 11 purposes. We do that for all sorts of things where we ask people in district court to perform kabuki dances. What's wrong with that? ZANDRA LOPEZ Correct. Well, all we're saying is that at the very – CHIEF JUSTICE ROBERTS I'm just trying to make sure you don't get totally misled by ZANDRA LOPEZ Right. CHIEF JUSTICE ROBERTS He's very seductive. He'll get you to pretty much admit that this Court was right and so now – ZANDRA LOPEZ Well, I think at the very, very least in this situation – CHIEF JUSTICE ROBERTS Give up. Give up. ZANDRA LOPEZ No. At the very least in this situation where this factor was at issue – CHIEF JUSTICE ROBERTS Well, let's talk about this factor. As I understand, your client's lawyer, which was not you – ZANDRA LOPEZ Right. CHIEF JUSTICE ROBERTS – let's just smile. You know, it wasn't me. You're sort of off the hook. Raised evidence of somebody else who committed what he claimed was a similar offense and  ZANDRA LOPEZ Correct. CHIEF JUSTICE ROBERTS I found precious little about what this other person was or what they did, who this person was, what they did and what time they got in the record. What is in the record to tell us about this other person? ZANDRA LOPEZ Well, in the record, both in the sentencing memo and at sentencing, the counsel provided the docket sheet which stated that two other defendants that were charged with similar crimes attempted murder with aiding and abetting. One of them received 70 months and the other defendant received 100 months. CHIEF JUSTICE ROBERTS Do we know any offender or offense characteristics at all besides that general abstraction? ZANDRA LOPEZ And at the sentencing hearing, the counsel also proffered to the court that in that particular crime, the defendants actually attempted the murder three separate times, one by poison and one by use of a firearm. And they also attempted to hide. CHIEF JUSTICE ROBERTS They got time off for ineptness? ZANDRA LOPEZ Excuse me? CHIEF JUSTICE ROBERTS They got time off for being klutzes? ZANDRA LOPEZ I don't know. But the problem is that the defense counsel CHIEF JUSTICE ROBERTS Well, now, excuse me. These were defendants totally unrelated to this crime. This is not a co-defendant or anything like that. ZANDRA LOPEZ No. CHIEF JUSTICE ROBERTS So you have a completely different crime. I mean, factually a different crime. This is not the same offense at all. What we know they have in common is that it was the same charge, right? ZANDRA LOPEZ Right. CHIEF JUSTICE ROBERTS We don't know anything else that they have in common. ZANDRA LOPEZ What we do know is that the defense counsel made a representation that this crime, the other crimes were much more serious than Mr. Klein's. CHIEF JUSTICE ROBERTS Is that enough? I'm just wondering what it is that the – I mean, obviously, district judges can't address every single conceivable sentencing factor hypothetically applicable to the case. I mean, to some extent, counsel has to provide some framework for saying, look, consider this, consider that, consider that. And if it's properly raised, then maybe your argument that the district court has to specifically address it, maybe it has some force. But we have to have the first step, whether district court does – I'm sorry, whether the lawyer for the defendant does enough to have raised it to the district court's attention. And what I'd like to explore is what is it that you think counsel needs to do and why you think it was enough in this case. When, you know, a docket sheet doesn't tell you the kind of – you know, what do you think counsel needs to do? I think if counsel, like in this case, provides evidence of it, makes an argument. But there's no evidence. What you have is a docket sheet, which told you some – and then you have some representations by counsel. But counsel is not a witness. He wasn't there, right? Presumably – I mean, he wasn't there at the crime scene. We don't even know whether he was present at any of the proceedings of these defendants. It could be a rumor. It could be hearsay. Okay, so you're a district judge, which some of us are, right? True. And, you know, this is raised, but what do you have to go on? How can you take the sentencing factor into account if counsel don't put before you facts, say, look, this is the way in which this defendant is similar to my client, and therefore there has to be a rational reason why they should be treated differently? And part of the problem is I don't quite know whether this counsel can present involving evidence of another case. Can he get sentencing transcripts? I mean, I suppose he could do that, right? I suppose so. I think the sentencing documents are under seal. And the probation report? The PSR would be under seal, although the district court certainly could obtain it if counsel requested that the court examine it. The sentencing hearing wouldn't be. If there was a transcript of the sentencing hearing or the pre-colloquy or the factual basis recitation or anything like that, that would be on the record and available, and you don't have to be a party to get it. Those are not under seal, right? No, I don't believe so. It would have been better if you had done that. Right. But I think in this case counsel did provide adequate showing that there was an issue. He made a presentation that there was an issue that should have been considered by the district court. Well, let's say we get past all that and the district court says, yes, you know, this other defendant is materially no different from your client, you know, after looking at the facts. And yet I just disagree with my fellow judge. I think Judge X down the hall was just too lenient. And, you know, I don't ‑‑ I can't articulate any difference between this individual defendant, but I'm certainly not going to be bound by a decision made by another judge in a single other case. Or maybe the other way around. I mean, the government could bring it in as a very serious sentence, and the judge says, well, I'm not going to be bound by a single sentence of another judge, even on identical facts. And I agree. I think the district court can do that. But the problem is, in this case, the district court didn't even consider the issue that was presented by defense counsel. Your Honor, I see that I only have 20 seconds. Can I just, before you walk away, I'm not as critical of the conduct of the defense counsel. I notice that on page 4 of his sentencing memorandum, he does set forth the two cases that he asked the court to consider, but only giving basically the names of the cases, the case numbers, and what the sentences were. But your primary concern is that Judge Huff failed to consider uniformity in the imposition of sentences. That's right? That's your primary concern? Correct. And yet she sentenced this gentleman right in the middle of the guideline range, which in the guidelines, when you look at the purpose of the guidelines, page 2 of the manual says basically the policy statement is for honesty, uniformity, and proportionality. And so Judge Huff basically probably did the one thing that would guarantee uniformity. She sentenced in the guideline range. And those were developed partially to ensure uniformity. How do you get around that? Well, I think that would be a great argument prior to Booker. But I think now we have to look at the totality of the factors, not just the one guideline factor that's purpose is for uniformity. There's another factor that we need to look at all the factors in totality in determining whether a defendant is receiving a uniform sentence, looking at all the factors, not just the guideline range. But uniform means uniform in terms of what others similarly situated would receive. Isn't that right? Right. And so, one, yes, under the guideline, a similarly situated defendant might have received that guideline range. But if we look at all the factors, maybe a similarly situated defendant would have received a sentence outside of that guideline range. And so now post-Booker, we do need to look at the totality of the factors and not just this one guideline factor. Okay. You may have 30 seconds for rebuttal, Your Honor. We might even give you a minute. Thank you. We'll hear from the government. Good morning, Your Honors. Alice Anderstrand on behalf of the United States. I think Your Honors hit all of my points very clearly, so I won't take too much of your time. With regard to the comment concerning the kabuki dance and the checklist, this Court has already said in United States v. Mix that the district court does not have to go through each and every factor under 3553A. You know, that's fair enough. And I, you know, some of that is in flux now with the case pending for the Supreme Court and Zavala and Bank and so on. But let's take that as given for the time being. But surely when somebody raises a specific factor, and we can talk about whether it was adequately raised here, the district judge has to at least acknowledge the factor and deal with it, no? I mean, if it doesn't mean that, if the 35, whatever it is, 53A doesn't mean that, I'm not sure what it means. Well, certainly the district court should address every argument it deems that is important. However, in this case, Your Honors, we're going to go through it. No, but that's a little restrictive. I mean, the district court might be wrong about whether something is important or not. I mean, let's say, in fact, there had been evidence here about, you know, there are 200,000 individuals that got substantially less time for the same crime. And let's say, in fact, there was evidence in the record that the crimes were in every way identical, in a material way identical. Would the judge have been within her rights to say nothing about it? Absolutely. But I think we're taking too many assumptions to get to that point. It's what we call a hypothetical. I know. In this case, we can start the hypothetical by asking questions about whether enough was put in. Absolutely. Just to avoid that discussion right now, I'm suggesting that maybe assume enough was put in. And you think the district judge can simply sentence without mentioning that factor at all? No. No matter how much evidence is put in, no matter how good a record is made, the district judge can simply not deal with it. Well, I think, Your Honor, hit the nail right on the head that right now the law is in flux. And what we do have is United States v. NIC saying it doesn't have to go over each and every 3553A factor in order for these. But NIC does not, by saying the court doesn't have to deal with every factor, doesn't also say that factors specifically stressed by the defendant don't have to be addressed. It's just, I mean, 3553A has a potentially large number of factors that the court could look at. And one could say, well, because the court didn't say it looked at this, you know, all the things that Ella mentioned, 3553, NIC says that's not, that's okay. You don't have to mention it. Correct. It's quite different to say that things are raised by the defendant or by the government for that reason, for that matter, rather, and the district court still doesn't have to deal with it. I find that a different proposition and a bit more troubling. Okay. I don't think that's the issue right now. I don't know if you want the government's personal opinion on whether the court, if something, if an issue is raised by a defendant, whether the court needs to specifically address that particular factor. That's exactly what's up. It's probably very prudent that they do do that, but in this case, there was simply not enough information to compare this case with the Tapati case, which is the other case. We just have a docket sheet. Judge Beistlein points out names were given, case numbers. District court could have, I mean, had access to records that counsel don't have access to, such as a PSR in those cases. I assume that the judge in one case can get the PSR in another case. I don't think it's secret from that, right? I don't believe it. I don't know, but in — I'm sorry. I don't believe it's a secret from one judge to another. One judge to another. So the court, you know, obviously this is private information vis-à-vis defense counsel and defendant in this case, but if the court wants to look at it, the court can — and why didn't the court have an obligation here when it was pointed out, look, here's somebody else whose facts we believe are very similar to this one, in fact worse than this one, and — Quite frankly, I think if defense counsel wanted to compare the Tapati case with this case, and the onus was on him to bring forward a sentencing memorandum, a plea agreement, plea colloquy, other types of unsealed documents that he could have attached. Maybe it would have been Mr. Tapati to say, I'm bad. I'm so much worse. So is this a Strickland failure? I don't think so, Your Honor. No. What I'm saying, Your Honor, is that what counsel tried to do is attach the docket sheet, and what we know in the record from the docket sheet is that we have two defendants by the name of Tapati and Woods who were sentenced to not to 70 months, as counsel said. Tapati got 131 months pursuant to a plea agreement, and Defendant Woods got 100 months. And we're talking about a case that was sentenced under the 2003 guidelines, the guideline which was a 28, base offense level 28 for this crime. And in 2004, the amendment number 663 increased the base offense level for attempted murder to 33. And that's the set of guidelines that Defendant Klein was sentenced under. So we're talking about a change in the guidelines, albeit the advisory. We're talking about a different starting point in this case versus the prior case. Which would all be perfectly good reasons for the district court to articulate it for coming up with a different sentence. But as I understand it, Judge Hoft didn't say anything at all about it. That's true. But we also have another case, United States v. Marcial Santiago, that said even if a disparity exists in the sentence, it is just one factor that would not render a defendant sentence unreasonable. It is just one factor that a court has to consider. And as Judge Trott mentioned, this Court, District Judge Hoft mentioned about three or four different factors and went into the defendant's history and his military service and so on and so forth, and sentenced within the midrange of the applicable guideline sentence. So it's the government's position, which is to be bound in future cases, that even if one of the parties, and this could equally well be the government, of course, raises a particular sentencing factor and makes a big point of presenting evidence. I realize you think that not enough is presented here, but even if the parties have placed a significant reliance on it, presents argument, evidence, and all that, the district court, in issuing its ruling, can touch base on some other factors but ignore this one completely. And we have to assume that the district court didn't abuse its discretion because it must have considered this factor. That's the government's position. So the next time you guys appeal, that's the position, and say the district judge didn't consider a factor raised by the government, that will be the ruling. That will be the precedent. I certainly wouldn't want to bind the government to that particular viewpoint. What I think I would do is to do that. But in a sense you do, because if we write an opinion saying that, in this case, then, of course, what's sauce for the, you know, one side is. Good for the goose, good for the gambler, I understand. Yeah, exactly. I can do that. I mean, it follows. I mean, if that's what we hold, that's what we hold. And the government will be bound by it whether it wishes to or not. I mean, we obviously can't make a precedent that says, well, if the defendant raises it, the district court can ignore it, but if the government raises it, I mean, I don't know. In this case, counsel, if Judge Huff did not mention that particular factor specifically, counsel in this case, during the sentencing hearing, could have specifically asked the district court and queried whether she had considered this, and then he could have made the appropriate record. He decided not to do that. So what does that mean? That means he waived that. Now he's he's Review it for plain error? I think it's always an abuse of discretion. But what I guess what I'm saying is that he he put some facts forward, some evidence forward in the form of a docket sheet. And there was more evidence that he could have done. He could have done a plea agreement, a sentencing memo, et cetera. And because he didn't do that, the district court, if he if he or she does not raise it at the sentencing hearing, certainly, counsel The practice pointer for the government here is that with all the sentencing stuff in flux, with everything that we've said about this particular aspect of the law, an assistant United States attorney ought to be very alert and tell the judge, you know, the mean old Ninth Circuit says you've got to consider all of these factors. And the defense has put forward factor whatever it is. And we respectfully request the court to address that factor in the sentencing. I mean, you can make a record so that we don't get into these whether she did or whether she didn't problems. I was the counsel in this case. And I, quite frankly, did not believe that there was enough evidence put forward by counsel. It would have been nice if somebody would have said that, that we wouldn't be here. That's the practice pointer, thinking ahead. Yeah. Lawyers always help me out when I'm in district court. They figure I don't know what I'm doing. They always sort of stand up and say, well, you know, you forgot this. You forgot that. Lesson learned. Especially the government, you know. It's always very helpful. I just have a, we're told the Ninth Circuit's view is that a guideline sentence is not presumptively reasonable. But might it be presumptively uniform, a guideline sentence? Could be. I mean, if nothing else, because the purpose of the, as I said before, is to develop uniformity. I understand the guidelines are advisory, but for 15 plus years, they've been trying to develop uniformity. It seems to me there has to be some significance to the fact that this sentence was imposed in the middle of the guideline range. Absolutely. That's a significant factor, I would think. Maybe it doesn't rise to the level of being presumptively uniform, but if it's not In the olden days, before you were born, judges used to get a profile of what people, what sentence people had gotten for crimes like this. And then your step wasn't, it really didn't lock you in, but it was kind of advisory. Here's what people are getting for this kind of a crime. So judges had that in front of them. So I think Judge Beisling was saying. Now we have the guidelines. That's an interesting point. Right. Well, I see that I am out of time, unless the Court has any more. I thought it was interesting. Do you know offhand what the co-defendant received for? Yes. Two hundred months, but she also had a criminal history. She's sentenced at a higher range. Correct. Correct. Thank you, Your Honor. Can I take a minute for rebuttal? I'd just like to briefly state that regardless of what the flux in the law is regarding the presumption of reasonableness, procedurally, the district courts have to look at 3553A factors and consider them. And also, I'd like to point out. What are you going to do if you win and it goes back? Present more evidence to the district court as to maybe how these two cases are similar. Do you know what that evidence is? I don't know offhand. Have you looked? I have not. So you can't even make an offer of proof that would convince us that you've got a rabbit in the hat. You know, to pull a rabbit out of a hat, you've got to have the rabbit in it to start with. And so you don't know whether it's there or not. I will look and maybe provide other district court cases to the district court. Mr. Todd's a magician. He knows about these things. But we know of one case that the co-defendant got 200 months. Right. So that's one thing we know. And that one, you'd have to deal with that if it got back. I think so. But she was bad. She was very bad. She had a higher criminal history category. And it appears that everybody was in agreement that she was the motivating factor. I actually like the argument that if he really wanted to kill this guy, he would have killed him. Because we had a case years ago where that argument worked. Oh, really? You've probably never heard of Audie Murphy. He was the most decorated soldier in World War II. He had congressional medals of honor. He was the best shot they ever had in the Army. We had a case in Los Angeles where he was charged with trying to shoot a dog handler who mistreated his dog. He fired six shots about ten feet away at the dog handler. And Paul Caruso, the defense lawyer, brought in all of his marksmanship records from the Army and his congressional medal of honor. And the argument was if Audie Murphy had intended to shoot this guy, he'd have put six bullets in his left nostril. And the jury bought it and let Audie Murphy off. To hell and back. Read the book. And then just finally, Your Honor, I'd just like to... You should have gone for a jury in this case. I should have, no? Just the government cites to Marcial Santiago. And I'd just like to note that in that case, the Ninth Circuit stated that the court the district court thoroughly reviewed all of the factors and the arguments made by counsel. So I think that case is clearly distinguished. I think your position is, I mean, to the contrary to the suggestion in Judge Beisland's questions, is that you can actually have a uniformity challenge even though the sentence is a smack dab in the middle of the sentencing range. Of course. And I think that's particularly true now after Booker, because the sentence does not have to fall under within the range. It could fall outside of it. And so we need to look at all of the factors and not just this one guideline factor. I mean, it could fall outside the range, but not for uniformity reasons. If you want to be uniform, everything would be sentenced right in the middle of the sentencing range, and that would be the most uniformity. And what you're really trying to do is to get a non-uniform sentence, something that is consistent with local practice, but that creates nationwide disparity rather than uniformity. I think it's also looking at factors that the guidelines don't consider, such as if the defendant has a prior conviction, what was involved with that prior conviction. Although it puts him in a certain criminal history category, you know, maybe he should fall well below the guideline range, like someone that's similar to his situation. Your argument, doesn't it lead inexorably to the situation where you're going to have maxi-trials at sentencing of all arguably similar cases, and then we could have a modified categorical approach or a categorical approach, you know, and you get into trials of this case against that case. I mean, what's the end of this? Well, I think if the party puts it at issue, it's discussed. So you can put in all cases from all over the country where somebody was charged with this kind of an offense and then have a trial as to what all the sentences were and then what's the end of this if you're after national uniformity? You try all the cases. You bring in all the facts on all the cases? Is that what you do? I mean, you bring in yours, the government brings in theirs, and you end up with a three-week trial on all attempted murder cases. Well, I think in this particular case, we brought in information regarding the Southern District of California. And it was not. But that's no good. All of the people sentenced for this crime in the last few years? Right. I don't know. I do not know, Your Honor. I doubt that a district. Well, don't you have to bring in all the people or at least a statistically viable sampling? Well, I think in this particular case, defense counsel presented it. The government did not even mention this one factor. The government could have countered with other. And they could bring in cases from North Carolina and Maine and Texas. And then it's up to the district court to decide what weight they will give to those types of cases. Oh, Justice Breyer had no idea what kind of stuff he was buying. Let me just add, the range is, if we presume, just for discussions, an offense level 33, then we've got a range of 135 to 168. Are you with me? Yes. Are you arguing it should have been? If presuming that you lose on the offense level and it's appropriate level is 33 as opposed to 27, and you have a range of 135 to 168, is it your argument that Judge Huff should have sentenced at the low end, 135, because of these others? Are you suggesting she should have departed downward considerably, gone beyond the sentencing guideline range? In fact, you argued for 37 months, I think, was your proposal at the sentencing hearing. Is that what you're arguing, to ignore the guidelines completely? No, no, not at all, Your Honor. What we're arguing is, yes, the Court should take into consideration the guideline range, but the Court should take into consideration other factors that are listed in 3553, one of them being disparity. Right. And if you look at disparity and you agree there's disparity, are you suggesting it should then go down to 135, which is the bottom of the guideline range, or should go all the way down to the 37 months, depending on what? I think the Court may, it's up to the discretion of the Court how low she would want to take it. Or not. I mean, what you're trying to avoid is unwarranted sentencing disparities. Right. So Court might say this is a disparity, it's warranted. Here's why, six reasons. Out. Right. But I think the District Court has to acknowledge it and consider it. See, it's fun to appear before the Ninth Circuit, isn't it? Yeah. Yeah. It's great fun. Thank you, Your Honor. Thank you. Thank you, counsel, for a very helpful argument on both sides. We'll order this case submitted, and we'll next hear argument in United States v. Bates.
judges: Kozinski, Trott, Beistline